Nathaniel K. Charny (NC 5664)
H. Joseph Cronen (HC 4814)
Charny & Wheeler P.C.
9 West Market Street
Rhinebeck, New York 12572
T - (845) 876-7500
F - (845) 876-7501
ncharny@charnywheeler.com
jcronen@charnywheeler.com

Attorneys for Plaintiff Mark Dotterer

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MARK DOTTERER,<br><br>        Plaintiff,<br><br>  v.<br><br>POUGHKEEPSIE CROSSINGS, LLC D/B/A THE PINES AT POUGHKEEPSIE CENTER FOR NURSING AND REHABILITATION,<br><br>        Defendant. | Complaint<br><br>Civil Action No. _____<br><br>Jury Trial Demanded |

  1. Plaintiff complains, upon knowledge as to himself and his own acts, and upon information and belief as to all other matters, as follows.

### Nature of the Case

  2. Plaintiff complains pursuant to the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101, et seq., and the New York State Human Rights Law ("NYSHRL"), New York State Executive Law § 290, et seq.  Plaintiff seeks damages to redress the injuries Plaintiff has suffered as a result of being discriminated against on the basis of Plaintiff's disability and being retaliated against for engaging in protected activity, resulting in Plaintiff's unlawful termination.

**Jurisdiction and Venue**

3. Jurisdiction of this Court is proper pursuant to 42 U.S.C. §§ 12117 and 2000e-5.

4. This Court has supplemental jurisdiction over Plaintiff's claims brought under state law pursuant to 28 U.S.C. § 1367.

5. Venue is proper in this district pursuant to 42 U.S.C. §§ 12117 and 2000e-5, as it is a judicial district in the state (New York) in which the unlawful employment practices are alleged to have been committed.

**Procedural Prerequisites**

6. Plaintiff filed charges of discrimination upon which this Complaint is based with the Equal Employment Opportunity Commission ("EEOC").

7. Plaintiff received a Notice of Right to Sue ("Notice") from the EEOC with respect to the herein charges of discrimination.

8. This action is being commenced within ninety (90) days of receipt of said Notice.

**Parties**

9. At all times material, Defendant Poughkeepsie Crossings, LLC was a domestic limited liability company operating in the State of New York.

10. At all times material, Defendant Poughkeepsie Crossings was engaged in an industry affecting commerce within the meaning of 42 U.S.C. § 12111.

11. At all times material, Defendant Poughkeepsie Crossings had 15 or more employees for each working day in each of 20 or more calendar weeks in 2021.

12. At all times material, Defendant Poughkeepsie Crossings had 15 or more employees for each working day in each of 20 or more calendar weeks in 2020.

13. At all times material, Defendant Poughkeepsie Crossings was Plaintiff's employer under the ADA.

14. At all times material, Defendant Poughkeepsie Crossings was Plaintiff's employer under the NYSHRL.

15. At all times material, Defendant Poughkeepsie Crossings did business as The Pines at Poughkeepsie Center for Nursing and Rehabilitation.

**Plaintiff's Disability**

16. At all times material, Plaintiff was diagnosed with a torn right meniscus.

17. At all times material, Plaintiff's torn right meniscus was an impairment that substantially limited one or more of Plaintiff's major life activities within the meaning of 42 U.S.C. § 12102(1)(A), including, <u>inter alia</u>, walking, standing, lifting, bending, and working.

18. At all times material, Plaintiff's torn right meniscus constituted (a) a physical, mental, or medical impairment resulting from anatomical, physiological, genetic, or neurological conditions which prevents the exercise of a normal bodily function or is demonstrable by medically accepted clinical or laboratory diagnostic techniques or (b) a record of such an impairment or (c) a condition regarded by others as such an impairment, within the meaning of NYSHRL § 292(21).

19. At all times material, Plaintiff's torn right meniscus, upon the provision of reasonable accommodations, did not prevent Plaintiff from performing in a reasonable manner the activities involved in the job.

20. Plaintiff was qualified for Plaintiff's position.

21. Plaintiff was capable of performing the core functions of the position.

## Material Facts

22. In or around March of 2020, Plaintiff began working for Defendant Poughkeepsie Crossings at The Pines at Poughkeepsie Center for Nursing and Rehabilitation.

23. The Pines at Poughkeepsie Center for Nursing and Rehabilitation is Defendant Poughkeepsie Crossings' facility located at 100 Franklin Street in Poughkeepsie, New York.

24. Defendant Poughkeepsie Crossings owns The Pines at Poughkeepsie Center for Nursing and Rehabilitation.

25. Defendant Poughkeepsie Crossings operates The Pines at Poughkeepsie Center for Nursing and Rehabilitation.

26. Defendant Poughkeepsie Crossings maintains The Pines at Poughkeepsie Center for Nursing and Rehabilitation.

27. Defendant Poughkeepsie Crossings manages The Pines at Poughkeepsie Center for Nursing and Rehabilitation.

28. Defendant Poughkeepsie Crossings controls The Pines at Poughkeepsie Center for Nursing and Rehabilitation.

29. On or around September 16, 2020, Plaintiff injured his right knee.

30. Plaintiff was later diagnosed with a torn right meniscus.

31. Plaintiff began wearing a large brace on his right knee to work as result of this injury.

32. Plaintiff delayed getting surgery to repair his right meniscus because of the COVID Pandemic.

33. In or around early March 2021, Plaintiff and Director of Human Resources Lisa Massarelli discussed Plaintiff's plans to take leave off of work to undergo surgery to repair his torn right meniscus.

34. Plaintiff explained that he would be out of work for approximately four to six weeks following his upcoming surgery planned for early April 2021.

35. In so doing, Plaintiff requested a reasonable accommodation for his disability in the form of time off to undergo surgery and time off to recover from the surgery.

36. Plaintiff also told Ms. Masarelli that he intended to apply for temporary disability insurance payments.

37. Plaintiff later applied for disability payments through an insurance company, The Hartford.

38. The Hartford approved Plaintiff's request for disability payments.

39. Plaintiff also spoke with his supervisor, Nunzio Incorvaia, in the runup to his surgery.

40. Plaintiff informed Mr. Incorvia that Plaintiff would need to take approximately four to six weeks off to recover from the surgery.

41. Plaintiff also requested a week off prior to his surgery.

42. Mr. Incorvaia approved a week of leave for Plaintiff prior to his surgery, and Plaintiff took this time off.

43. Mr. Incorvaia also indicated that Plaintiff could take the requested approximately four to six weeks off to undergo and recover from surgery.

44. On or about April 2, 2021, Plaintiff underwent surgery to repair his torn right meniscus.

45. In or around the afternoon of April 14, 2021, Ms. Massarelli telephoned Plaintiff and left a voicemail message for him.

46. On or about April 16, 2021, Ms. Massarelli sent Plaintiff a "Termination Letter."

47. In part, the Termination Letter read:

> On March 1, you had been given the FMLA documentation to have filled out by your Doctor for your upcoming Medical Leave of Absence. Presently, we have not received the FMLA paperwork to approve this absence. Nunzio Incorvaia has attempted at contacting you via text and phone, with no response. On April 14, I had also phoned you with no response to this day. Therefore, we are accepting this as your voluntary resignation.

48. This stated basis for terminating Plaintiff was a pretext for discrimination against Plaintiff on the basis of his disability and retaliation against Plaintiff for requesting a reasonable accommodation for disability.

49. The Termination Letter claims that "Nunzio Incorvaia has attempted at contacting [Plaintiff] via text and phone, with no response."

50. However, Plaintiff had multiple interactions with Mr. Incorvaia while Plaintiff was out on leave, and Mr. Incorvaia never indicated that Plaintiff's position was in danger in these interactions.

51. In addition, Ms. Massarelli's message did not give Plaintiff a deadline by which to respond.

52. Further, the temporal proximity between Plaintiff's requests for accommodation and his termination demonstrates a discriminatory and/or retaliatory animus towards Plaintiff, in that Defendant Poughkeepsie Crossings terminated Plaintiff less than seven weeks after Plaintiff first requested a reasonable accommodation, approximately three weeks after Plaintiff began his leave in anticipation of his surgery and to recover from his surgery, and approximately two weeks after Plaintiff underwent his surgery.

53. Defendant Poughkeepsie Crossings refused to provide Plaintiff with a reasonable accommodation for his disability by terminating him when he went out on leave for surgery to repair his torn right meniscus.

54. Defendant Poughkeepsie Crossings could have easily granted Plaintiff's request for a reasonable accommodation by allowing him to take leave to undergo and recover from knee surgery.

55. Defendant Poughkeepsie Crossings failed to engage properly in an interactive process with Plaintiff regarding his request for a reasonable accommodation.

56. Defendant Poughkeepsie Crossings knew or should have known of the discriminatory and retaliatory conduct and failed to take corrective measures within its control.

57. Plaintiff was repulsed, offended, disturbed, humiliated, and disgusted by this blatantly unlawful, discriminatory, and retaliatory termination.

58. Defendant Poughkeepsie Crossings retaliated against Plaintiff because Plaintiff requested and took leave for his disability.

59. The above are just some of the ways Defendant Poughkeepsie Crossings discriminated against and retaliated against Plaintiff.

60. Defendant Poughkeepsie Crossings treated Plaintiff this way solely due to Plaintiff's disability.

61. Defendant Poughkeepsie Crossings acted intentionally and intended to harm Plaintiff.

62. Defendant Poughkeepsie Crossings unlawfully discriminated against, retaliated against, humiliated, degraded, and belittled Plaintiff. As a result, Plaintiff suffers loss of rights, emotional distress, and loss of income.

63. As a result of the acts and conduct complained of herein, Plaintiff has suffered a loss of employment, income, the loss of a salary, loss of bonus, loss of benefits, other compensation which such employment entails, special damages, and great inconvenience.

64. Plaintiff has also suffered future pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

65. Defendant Poughkeepsie Crossings acted maliciously, willfully, outrageously, and with full knowledge of the law.

66. As such, Plaintiff demands punitive damages.

### First Cause of Action for Discrimination
### Under the ADA

67. Plaintiff restates the foregoing allegations.

68. The ADA, at 42 U.S.C. § 12112(a), provides: "No covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."

69. Defendant Poughkeepsie Crossings violated the section(s) cited as set forth.

### Second Cause of Action for Failure to Accommodate
### Under the ADA

70. Plaintiff restates the foregoing allegations.

71. Entitled "Construction," 42 U.S.C. § 12112(b) provides:

> As used in subsection (a), the term "discriminate against a qualified individual on the basis of disability" includes—
>
> . . . .
>
> (5)
>
> (A) not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a

disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity; or

(B)denying employment opportunities to a job applicant or employee who is an otherwise qualified individual with a disability, if such denial is based on the need of such covered entity to make reasonable accommodation to the physical or mental impairments of the employee or applicant.

72. Defendant Poughkeepsie Crossings violated the section(s) cited as set forth.

### Third Cause of Action for Retaliation
### Under the ADA

73. Plaintiff restates the foregoing allegations.

74. The ADA, at 42 U.S.C. § 12203, provides:

(a)Retaliation

No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter.

(b)Interference, coercion, or intimidation

It shall be unlawful to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed, or on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of, any right granted or protected by this chapter.

75. Defendant Poughkeepsie Crossings violated the section(s) cited as set forth.

### Fourth Cause of Action for Interference
### Under the ADA

76. Plaintiff restates the foregoing allegations.

77. The ADA, at 42 U.S.C. § 12203, provides:

(a)Retaliation

> No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter.
>
> (b)Interference, coercion, or intimidation
>
> It shall be unlawful to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed, or on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of, any right granted or protected by this chapter.

78. Defendant Poughkeepsie Crossings violated the section(s) cited as set forth.

### Fifth Cause of Action for Discrimination
### Under the New York State Executive Law

79. Plaintiff restates the foregoing allegations.

80. New York State Executive Law § 296(1) provides that:

> It shall be an unlawful discriminatory practice: (a) For an employer or licensing agency, because of an individual's age, race, creed, color, national origin, sexual orientation, military status, sex, disability, predisposing genetic characteristics, familial status, marital status, or domestic violence victim status, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment.

81. Defendant Poughkeepsie Crossings violated the section(s) cited as set forth.

### Sixth Cause of Action for Failure to Accommodate
### Under the New York State Executive Law

82. Plaintiff restates the foregoing allegations.

83. New York State Executive Law § 296(3)(a) provides that:

> It shall be an unlawful discriminatory practice for an employer, licensing agency, employment agency or labor organization to refuse to provide reasonable accommodations to the known disabilities, or pregnancy-related conditions, of an employee, prospective employee or member in connection with a job or occupation sought or held or participation in a training program.

84. Defendant Poughkeepsie Crossings violated the section(s) cited as set forth.

## Jury Demand

85. Plaintiff requests a jury trial on all issues to be tried.

## Request for Relief

**WHEREFORE**, Plaintiff respectfully requests a judgment against Defendant Poughkeepsie Crossings:

A. Declaring that Defendant Poughkeepsie Crossings engaged in unlawful employment practices prohibited by the ADA and NYSHRL in that Defendant Poughkeepsie Crossings discriminated against Plaintiff based on Plaintiff's disability and retaliated against Plaintiff for engaging in protected activity and wrongfully terminated Plaintiff due to Plaintiff's disability and because Plaintiff engaged in protected activity;

B. Awarding damages to Plaintiff for all lost wages and benefits resulting from Defendant Poughkeepsie Crossings' unlawful discrimination, retaliation, and conduct and to otherwise make Plaintiff whole for any losses suffered because of such unlawful employment practices;

C. Awarding Plaintiff compensatory damages for mental and emotional injury, distress, pain, suffering, and injury to Plaintiff's reputation in an amount to be proven;

D. Awarding Plaintiff punitive damages;

E. Awarding Plaintiff attorneys' fees, costs, and expenses incurred in the prosecution of the action; and

F. Awarding Plaintiff such other and further relief as the Court may deem equitable, just, and proper to remedy Defendant Poughkeepsie Crossings' unlawful employment practices.

Dated: Rhinebeck, New York
December 13, 2022

_____
Nathaniel K. Charny (NC 5664)
H. Joseph Cronen (HC 4814)
Charny & Wheeler P.C.
9 West Market Street
Rhinebeck, New York 12572
T - (845) 876-7500
F - (845) 876-7501
ncharny@charnywheeler.com
jcronen@charnywheeler.com

Attorneys for Plaintiff Mark Dotterer